[Cite as *State ex rel. Nothstine v. Nothstine*, 2016-Ohio-44.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO, ex rel.,             :
CHRISTINA NOTHSTINE, nka ALLEN      :
                                    :    C.A. CASE NO.   26684
          Plaintiff-Appellant       :
                                    :    T.C. NO. 04DM251
v.                                  :
                                    :    (Civil Appeal from Common
HARRIS NOTHSTINE                    :     Pleas Court, Domestic Relations)
                                    :
          Defendant-Appellee        :
                                    :
                                    :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___8th___ day of ____January____, 2016.

. . . . . . . . . .

TRAVIS E. TINKHAM, Atty. Reg. No. 0089546, 14 W. Fourth Street, Reibold Bldg., P. O. Box 8744, Dayton, Ohio 45401
          Attorney for Plaintiff-Appellant

HARRIS NOTHSTINE, 57 Wainwright Drive, Dayton, Ohio 45431
          Defendant-Appellee

. . . . . . . . . . . .

FROELICH, P.J.

{¶ 1}  The Montgomery County Support Enforcement Agency (MCSEA) appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which denied its Motion to Establish an Arrears Repay for Harris W. Nothstine (Father).  MCSEA had sought to collect unpaid cash medical payments (and fees

attributable to those payments) from Father; such payments represented a contribution to his child's medical care, and they were owed only during periods when private health insurance was unavailable at a reasonable cost through Father's job. The trial court found that the obligation for such payments had not been properly imposed and therefore could not be collected by MCSEA. For the following reasons, the judgment of the trial court will be affirmed.

{¶ 2} The parties were married for two years, during which time they had one child. On June 11, 2004, the trial court dissolved Father and Mother Christina Nothstine's marriage when it filed its Judgment Entry and Decree of Dissolution, which incorporated the parties' separation agreement. The decree included an agreed-upon upward deviation in the amount of child support while Mother sought work. With respect to "Health Insurance," the separation agreement provided:

> The obligor shall provide health insurance coverage, for the dependent children pursuant to the Dependent Health Care Order/Qualified Medical Child Support Order filed herewith.
>
> * * *
>
> Costs of the remaining medical, dental, optical, and all psychological expenses, shall be shared by obligor and obligee in amounts equal to fifty percent (50%).

The Standard Order of Health Care Needs for Dependent Children was attached.

{¶ 3} In February 2006 and again in March 2009, Father requested a reduction in his child support obligation due to changes in his employment circumstances. In both instances, the request for a reduction was granted. In its December 2009 judgment

(ruling on the March 2009 motion), the trial court specifically addressed for the first time the issue of payment of cash medical support. The judgment stated, however, that based on the parties' incomes and the cash medical support guidelines, no cash medical payment (or a payment of "$0.00 per month") was appropriate, even when no private health insurance was being provided by either parent. At that time, no private insurance was available for the child at a reasonable cost.[1]

{¶ 4} In March 2012, Mother requested that MCSEA conduct an administrative review of Father's child support obligation. After its review, MCSEA filed an administrative adjustment recommendation, which recommended that: 1) child support be increased administratively to $383 per month, 2) Father be ordered to provide health insurance for the child, which was available through his employer at a reasonable cost, and 3) in the event that "private health insurance is no longer being provided in accordance with this order," Father pay $72 per month for cash medical support. The recommendation noted that Father had not provided information to MCSEA during the investigation, but that the Ohio Department of Job and Family Services computer system indicated that Father was employed and had access to health insurance at a reasonable cost.

{¶ 5} Father requested a Mistake of Fact hearing, but he did not appear for the hearing. The administrative hearing officer subsequently found no mistake of fact in the MCSEA's findings.

---

[1] The judgment states both that "mother shall continue to provide health insurance" and that "[t]here is no available insurance for the child at a reasonable cost." The judgment also states that Mother was unemployed. As such, we infer that Mother was unable to provide private insurance, although she may have been eligible for some type of publicly-funded health benefits for the child.

{¶ 6} In July 2012, the trial court adopted the administrative adjustment hearing recommendation and issued a notice to withhold child support in the amount of $383 per month, plus fees. It also issued "Dependent Health Care Order [and] Qualified Medical Child Support Orders"; these orders found that health insurance was available to Father at a reasonable cost and ordered Father to enroll the child in the insurance coverage. The court's entry adopting the administrative adjustment hearing recommendation did not specifically mention the $72 per month that would be owed by Father as cash medical support if insurance became unavailable or unaffordable, but it did adopt the administrative adjustment recommendation without any exceptions or exclusions.

{¶ 7} In March 2013, Father filed a motion to reallocate parental rights and responsibilities. Mother had committed a probation violation related to drug possession and had been sent to a drug treatment program. Mother left the child with his maternal grandmother, but the grandmother had placed the child with Father. While the motion for reallocation of parental responsibilities was pending, the parties entered into an agreed order which suspended Father's child support obligation until further order of the court and stated that "any funds in hold balance shall be released to father upon payment of any arrearage or administrative fees." (The "hold balance" apparently originated when automatic support payments were made during the time Mother was in jail or treatment and Father or the grandmother had physical custody of the child.)

{¶ 8} There were numerous problems while the child was in Father's care, including a suspension from school and lack of supervision and medication. In August 2013, after a hearing, the trial court denied Father's motion for reallocation of parental rights.

{¶ 9} In September 2013, the parties filed another agreed order. This order provided for Father to be the residential and custodial parent, with no child support payable by Mother, and other provisions related to parenting time. The order further provided that no health insurance was available at a reasonable cost and that the parties would divide health care costs as follows: Father to pay 42%, Mother to pay 58%.

{¶ 10} The trial court incorporated the parties' agreement into an Entry and Order to Adjust Support Enforcement Agency Records, dated February 25, 2014. This entry stated, in pertinent part, that 1) no arrearage was owed to Mother, 2) Father owed an outstanding arrearage to the State of $521.44, and 3) Father "shall contact [MCSEA] regarding payment of the outstanding arrearage owed to the state." As an "Exhibit" attached to the entry, the court included an affidavit signed by both parties stating that the arrearage owed to the State should be "set at $0" for child support due to a "custody change and also [Father] had him [the child] months before change."

{¶ 11} In January 2015, MCSEA filed a Motion to Establish an Arrears Repay, seeking repayment of the $521.44 owed to it, which was primarily attributable to cash medical support. Among other sections, MCSEA cited R.C. 3121.36, which provides that "termination of a court support order or administrative child support order does not abate the power of any court or child support enforcement agency to collect any overdue and unpaid support or arrearage owed under the terminated support order," and that such arrearage payments "shall be at least equal to the amount that was withheld or deducted under the terminated child support order." MCSEA also filed a Motion for Joinder, arguing that the outstanding arrearage could not be waived by the parties and that the Department of Job and Family Services should be joined "in order to protect its interest

in this matter." The trial court granted the motion for joinder.

{¶ 12} In February 2015, the magistrate held a hearing on MCSEA's motion to establish an arrears repay. No transcript of this hearing has been provided to this court. In March, the magistrate filed a decision, which stated:

An Entry and Order was filed February 25, 2014 referencing an outstanding arrearage reflected in the Support Enforcement Agency's SETS records; the referenced arrearage is $458.04 plus $63.40 in fees.

The SEA filed its motion in January 2015 to collect the arrears. Its audit, Court Exhibit I, reflects the arrearage as zero in child support and cash medical support of $458.04 on its second page. In addition, unpaid fees of $63.40 are added to this amount.

It is found that there was no court order for cash medical support. As there was no order, the SEA's records are inaccurate as to the cash medical support owing. While the Entry and Order adopted the SEA's recommendation, at no time did the Court order cash medical support. Moreover, the obligor did not have notice of this obligation.

{¶ 13} Having found that there was no order for cash medical support, the magistrate concluded that MCSEA's records as to the amount owing were inaccurate, that Father did not have notice of this obligation, and that only a small fee arrearage ($54.24) related to child support was still owed. MCSEA did not file any objections, and the trial court adopted these findings.

{¶ 14} MCSEA appeals from the trial court's judgment. It raises two assignments of error, which challenge the trial court's ability to "vacate" its (the trial court's) prior finding

that Father had an arrearage for unpaid cash medical payments and its refusal to allow MCSEA to collect the arrearage.

{¶ 15} MCSEA did not file objections to the magistrate's decision, as permitted by Civ.R. 53(D)(3)(b)(i). In the absence of objections, the MCSEA may not assign as error on appeal the magistrate's factual findings or legal conclusions. Civ.R. 53(D)(3)(b)(iv). MCSEA also did not file a transcript of the hearing that preceded the magistrate's decision, as required by Civ.R. 53(D)(3)(b)(iii), which would allow us to fully review the trial court's decision to adopt the magistrate's decision. For these reasons, MCSEA has waived its right to challenge the magistrate's decision (as adopted by the trial court's judgment) on appeal, and its assignments of error are overruled.

{¶ 16} Although we find that MCSEA waived its right to raise its arguments on appeal, we are not holding that the magistrate's conclusion is correct regarding whether the Administrative Hearing Adjustment Recommendation, which was adopted by the trial court, could not or should not be enforced because "the parties would have had to search through 11 pages" of the recommendation to find the provision related to cash medical payments. This is especially true if the reasoning suggests that the length of a judgment entry or incorporated document controls the validity of any of its provisions due to lack of "notice."

{¶ 17} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Travis E. Tinkham
Harris Nothstine

Christina Allen
Hon. Timothy D. Wood